IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Karen Signal,                                )<br>                                                      )<br>              Plaintiff,                       )<br>                                                      )<br>v.                                                   )<br>                                                      )<br>Alberto Gonzales, Attorney General;   )<br>Geraldo Maldonado, Warden; Gena       )<br>Pedroni, Executive Assistant; Katheryn )<br>Mack, Supervisor of Education; Dr.       )<br>Michael Mazzeo, Chief Psychologist,    )<br>                                                      )<br>              Defendants.                    )<br>_____) | C.A. No.: 9:05-1972-PMD-RSC<br><br>**<u>ORDER</u>** |

Plaintiff Karen Signal ("Signal"), proceeding *pro se*, filed this employment discrimination action against Defendants, alleging race-based discrimination. Defendants filed a motion to dismiss, or in the alternative, for summary judgment, pursuant to Rules 12(b)(1), (6), and 56. *See* Fed. R. Civ. P. 12(b)(1), (6), and 56. The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge recommends dismissal of Plaintiff's claims for lack of subject matter jurisdiction. A party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Plaintiff has filed timely objections to the R&R.

## <u>BACKGROUND</u>

Plaintiff Signal is a woman of Korean descent employed as a Food Service Vocational Training Instructor by the Department of Justice, Federal Bureau of Prisons, at the Federal Correctional Institute in Estill, South Carolina. On July 12, 2005, Plaintiff filed the present action, alleging race-based discrimination and hostile work environment against the following Defendants: Attorney General Alberto Gonzales, Warden Geraldo Maldonado, Executive Assistant Gena

Pedroni, Supervisor of Education Kathryn Mack, and Chief Psychologist Dr. Michael Mazzeo. Plaintiff's complaint includes two counts: (1) Deprivation of Constitutional Rights in Violation of 42 U.S.C. § 1983; and (2) Intentional Infliction of Emotional Distress. Also, Plaintiff requests the following relief: (1) compensatory or actual damages totaling $152,298.22; (2) punitive damages totaling $150,000.00; (3) reimbursement for 96 hours of sick leave; (4) an eight-hour time off award; and (5) such other relief the court deems proper.

## I.    Factual History

As previously mentioned, Plaintiff is a Korean female employed as a Vocational Training Instructor at the Federal Correctional Institute in Estill, South Carolina. Plaintiff also served the collateral duty of an EEO Counselor. Plaintiff complains that she was required to inform Kathryn Mack ("Mack"), her supervisor, when she left the Education Department to perform her duty as an EEO Counselor. Plaintiff states that on November 14, 2003, she emailed Mack to tell her she needed to work on an EEO matter, and that she later spoke with Mack about it personally. Plaintiff claims that Mack had no problem with her working on the EEO matter because it would not interfere with any scheduled classes. On November 23, 2004, Mack replied to Plaintiff's email, "[i]n the future, please specify exactly what time frames you will need. Also, you are expected to obtain an appropriate approval, either written or verbal, before taking time away from your departmental duties and responsibilities." (Compl. Ex. 6.) Plaintiff complains that Mack also sent this email to the Associate Warden.

During 2003, Plaintiff served the collateral duty of Parenting Coordinator, and in October, Plaintiff submitted a proposal for a family day at the satellite camp. During December, Plaintiff was relieved of the duty as Parenting Coordinator, and the duty was assigned to Rebecca Layer, a recent

addition to the Education Department.  Plaintiff's original proposal was rejected by the administration, and Mack asked her to redraft it in January of 2004.  Also, on January 16, 2004, Mack asked Plaintiff to prepare another proposal for the FCI visitation room.  In her Affidavit, Mack states that she asked Plaintiff to perform these tasks because she had completed the first proposal and because she knew how to put proposals together, whereas Ms. Layer was new to the job and unfamiliar with the process.  Plaintiff complains that staff who are Caucasian, African-American, and Puerto Rican were not required to complete another staff member's collateral duties.

Next, Plaintiff states that on December 8, 2003, Mack read to her a memorandum, in which Ken Jones, the Supervisor of Recreation, stated that he had observed Plaintiff and Lorrie Causey, a Caucasian, eating what appeared to be a meal at their desks.  Plaintiff complains that Mack counseled her about the memo but did not counsel Causey.

On January 7, 2004, Henry Lusk, the Food Service Administrator, contacted Plaintiff on her radio and asked her to meet him outside the Department so he could inform her of the death of a former colleague.  Plaintiff states that Lusk told her that Mack angrily questioned him about the transmission, but that Mack seemed remorseful for approaching him in that manner, after being informed of the circumstances.

On that same day, Mack asked Plaintiff why she was in another staff member's office in the Psychology Department.  Plaintiff told Mack that she was dropping off some material while on her way to the Education Department.  Mack told Plaintiff that she should not be in another staff member's office.  Plaintiff claims that she has observed staff who are Caucasian, African-American, and Puerto Rican in all areas of the institution.

Also on January 7, 2004, Plaintiff requested time off on the following day from noon until

3

2:00 p.m. to prepare a response to the Warden concerning a proposal letter issued by Mack on December 18, 2003, wherein Mack recommended that Plaintiff be temporarily suspended for inattention to duty. Mack approved the requested time off for Plaintiff.

On January 8, 2004, however, Plaintiff was unexpectedly reassigned to a custody post; Mack's Affidavit states that she forgot to provide a relief for Plaintiff during the hours of her requested time off and that Plaintiff did not remind her to do so. Plaintiff asserts that due to an institution emergency at the time, she was unable to contact Mack on the radio to remind her of the scheduled time off. Plaintiff returned to the Department at approximately 3:00 p.m. Thus, on the following day, Plaintiff emailed Mack to request time off from 2:00 to 3:30 p.m. so she could prepare her response. Mack replied to Plaintiff's email, asking her where she had been on the previous day between 3:00 and 5:00 p.m. Also, Mack suggested that Plaintiff use the time from 3:30 and 5:00 p.m. on that day for her scheduled time off, because Plaintiff did not have any inmate responsibilities during this time frame. According to Plaintiff, Mack's email, which also was sent to the Associate Warden of Industries and Education, implies that she was absent without leave between 3:00 and 5:00 p.m. on January 8. Plaintiff complains that Mack knew Plaintiff did not have any classes during the original time frame she had requested (between 2:00 p.m. and 3:30 p.m. on January 9); at 3:57 p.m., Mack emailed Plaintiff approving the requested time. Due to the late notice, Plaintiff was unable to meet with her representative. Plaintiff asserts that Bryan Hill, a Caucasian, received time off in a similar situation with no problem.

In addition to the aforementioned, Plaintiff complains that the room in which she conducted her classes was unsafe due to a lack of visibility when the door was closed. On January 22, 2004, Plaintiff emailed Mack and informed her of her safety concerns. Mack responded to Plaintiff that

4

the Facilities Department would be replacing the windowless door and installing a door with a window. Mack told Plaintiff to be sure to wear a radio and/or body alarm, and Mack stated that she would check on her regularly.

On January 28, 2004, Plaintiff emailed the Facilities Manager to see whether the door was being replaced. The manager responded that he currently did not have a work order to replace the door. The work order to replace the door was not submitted until February 26, 2004. Additionally, Plaintiff claims that Mack never checked on her before the door was replaced.

On March 1, 2004, Plaintiff informed Warden Maldonado of her safety concerns. He agreed with Mack that the door needed to be replaced and that Plaintiff needed to wear a body alarm. Plaintiff complains that her room was not assigned a specific body alarm and that she was ordered to conduct class in a room with no visibility between January 26, 2004, and March 23, 2004, but that staff who are Caucasian, African-American, and Puerto Rican were ordered to take down blinds and window tint due to limited staff visibility. Also, Plaintiff claims that a Caucasian staff member did not have to teach in the room until the door was replaced.

On January 22, 2004, during staff recall, ten members of the Tenth Anniversary Committee received awards. Plaintiff complains that she was the only staff member on the committee who did not receive an award. Defendants claim, however, that although Plaintiff made a cake at the request of the Committee, she actually was not a member of the Committee, and therefore, she did not receive an award. The day of the celebration was on Plaintiff's day off, and she received compensatory time and reimbursement for the cost of the ingredients. Plaintiff complains, however, that she did not receive her pay and reimbursement for over three weeks and that she was the only employee ordered to give a detailed memorandum to the Warden to receive the compensatory time.

5

On January 23, 2004, Mack documented in Plaintiff's performance log that her ServSafe Food Program had low completion rates and that Plaintiff needed to disseminate information about the program to the inmates to increase the program's completion rates in order for the program to continue. Plaintiff complains that a Caucasian training instructor who took two-and-a-half years to complete one student did not receive a log entry stating that her program would be discontinued because of low completion rates.

Lastly, Plaintiff claims that on February 22, 2005, Mack ordered inmates to empty a locker used by Plaintiff for the previous twelve years, in retaliation to her administrative claim.

## II.    Procedural History

On March 24, 2004, Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). However, on March 10, 2005, an EEOC Administrative Judge issued a written decision determining that Plaintiff failed to state a claim. Approximately a month later, the Complaint Adjudication Office of the Department of Justice issued a final decision, finding no evidence to support Plaintiff's claim of race-based discrimination or hostile work environment.

On July 12, 2005, Plaintiff, proceeding *pro se,* filed the present complaint, along with 58 exhibits, alleging race-based discrimination and hostile work environment against Defendants. In her complaint, Plaintiff alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff's complaint alleges a cause of action for deprivation of constitutional rights in violation of 42 U.S.C. § 1983, and a cause of action for intentional infliction of emotional distress.

On October 4, 2005, Defendants filed a motion to dismiss, or in the alternative, for summary judgment, pursuant to Rules 12(b)(1), (6) and 56 of the Federal Rules of Civil Procedure. In their

motion, Defendants assert that Plaintiff has jurisdiction under Title VII of the Civil Rights Act, 42

U.S.C. § 2000e, *et seq.*, and that Plaintiff has correctly named Alberto Gonzales, Attorney General,

as a Defendant, pursuant to 42 U.S.C. § 2000e-16(c).  However, Defendants assert that Plaintiff

incorrectly named Defendants Maldonado, Pedroni, Mack, and Mazzeo, because the only proper

defendant in an employment discrimination action brought by a federal employee is the "head of the

department, agency, or unit."  *See* 42 U.S.C. § 2000e-16(c).  Additionally, Defendants correctly

point out that Title VII provides the exclusive remedy to Plaintiff; thus, Plaintiff cannot state a claim

pursuant to 42 U.S.C. § 1983 or for the tort of intentional infliction of emotional distress.  In any

event, Defendants argue that Plaintiff's complaint fails to state a Title VII claim under which relief

can be granted, and thus, the court should dismiss it under Rule 12(b)(6).  Alternatively, Defendants

argue that summary judgment is appropriate because the evidence demonstrates that Plaintiff has

not suffered an adverse employment action, that Plaintiff cannot establish similarly situated

employees outside her protected class who were treated differently, and ultimately, that Defendant

never actually discriminated against Plaintiff.

 In her response to Defendant's motion, Plaintiff states that she "possibly cited a wrong

jurisdictional statement in her Complaint," and requests that it be amended to request relief under

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics Agents*, 403 U.S. 388 (1971).  (Pl.'s Opp.

to Mot. at 1.)  Thereafter, Plaintiff asserts that her complaint seeks redress for violations of 42

U.S.C. §§ 1983 and 1985 and that all Defendants are properly named.

 On November 22, 2005, Defendants responded to Plaintiff, asserting that the Civil Service

Reform Act ("CSRA") provides the exclusive remedy for a plaintiff's *Bivens* and statutory claims

that arise from the federal employment relationship.  (Def.s' Response at 1.); *see Hall v. Clinton*,

235 F.3d 202 (4th Cir. 2000) (holding that "Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship"). Thus, Defendants assert that amendment of Plaintiff's complaint to assert a *Bivens* cause of action would be entirely futile. The court agrees.

On December 2, 2005, Defendants filed a motion to stay discovery or for a protective order, asking the court to stay discovery until the court rules upon Defendants' pending motion to dismiss or for summary judgment.

On December 13, 2005, Plaintiff filed a reply to Defendants, stating: "Plaintiff would have brought the action under the appropriate Title and section of the U.S.C.A. if it were applicable. If the Plaintiff had found the section of the CSRA that plainly states it to be the exclusive remedy in a bias and prejudice complaint, she would have brought her original action under that section and would amend her action appropriately." (Pl.'s Reply at 1-2.)

On January 9, 2006, the Magistrate Judge issued an R&R, recommending dismissal of Plaintiff's complaint for lack of subject matter jurisdiction. In the R&R, the Magistrate Judge notes that Plaintiff proceeds *pro se*, and accordingly, her pleadings "must be held to less stringent standards than that of formal pleadings drafter by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1972). Nevertheless, the Magistrate Judge states that the court cannot "override the firm decision of a *pro se* litigant." (R&R at 5.) Ultimately, the Magistrate Judge states: "Since Signal seeks relief under the Constitution and state common law and specifically repudiates any Title VII claims, this court lacks subject matter jurisdiction over the action and the defendants' motions should be granted." (R&R at 6.)

On January 23, 2006, Plaintiff filed objections to the R&R, asserting that the Magistrate

8

Judge "misconstrued" her intent by finding that she specifically chose not to sue under Title VII. Plaintiff notes that in her November 4, 2005, objection to Defendants' motion for summary judgment, she quotes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff also states that she sought to invoke the court's subject matter jurisdiction and that she "does bring her action, if appropriate, under Title VII of 42 U.S.C. § 2000e, if that is, indeed, the only remedy available to Plaintiff and it invokes the Court's subject matter jurisdiction." (Pl.'s Obj. at 2.) Then, Plaintiff requests to amend her Complaint.[1]

Ultimately, after a review of the entire record, the R&R, and Plaintiff's objections, the court declines to adopt the R&R. First, as previously mentioned, Plaintiff proceeds *pro se*, without the benefit of knowledgeable counsel, and accordingly, the court holds Plaintiff's complaint to less stringent standards than pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, the court does not agree with the Magistrate Judge's conclusion that she specifically repudiated any Title VII claim. Rather, in light of Plaintiff's *pro se* status and her objections to the R&R, the court believes that Plaintiff tried to bring her suit under the appropriate statute and that she "does bring her action, if appropriate, under Title VII of 42 U.S.C. § 2000e, if that is, indeed, the only remedy available." (Pl.'s Obj. at 2.) Accordingly, the court finds, contrary to the Magistrate Judge, that although Plaintiff's complaint references improper statutes, under the less stringent pleading rules for *pro se* litigants, the allegations of Plaintiff's complaint sufficiently state grounds for subject matter jurisdiction under Title VII. However, for the reasons set forth below, the court dismisses Plaintiff's claim for hostile work environment for failure to state a claim,

---

[1] Because the court construes Plaintiff's *pro se* complaint broadly to sufficiently state grounds for subject matter jurisdiction under Title VII, it is unnecessary for Plaintiff to actually amend her complaint.

and the court grants Defendants' motion for summary judgment as to Plaintiff's claim for disparate treatment.

## STANDARD OF REVIEW

### I.      Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(c). As previously mentioned, the court declines to adopt the R&R, but in the interest of avoiding undue burden and delay, the court does not find it necessary to recommit the matter to the Magistrate Judge for further findings.

### II.     Federal Rule of Civil Procedure 12(b)(1)

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991).

### III.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir. 1972).

Additionally, "[u]nder Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " Fed. R. Civ. P. 12(b)(6).

## IV.    Federal Rule of Civil Procedure 56

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115,

119 (4th Cir. 1991).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases."  *Celotex*, 477 U.S. at 327.

## DISCUSSION

Although Plaintiff has attempted to bring this employment discrimination action under a number of statutes, including 42 U.S.C. §§ 1983 and 1985, the exclusive remedy for employment discrimination claims brought by federal employees is Title VII, 42 U.S.C. § 2000e, *et seq.*; *see, e.g.*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that section 717 of  Title VII, "provides the exclusive judicial remedy for claims of discrimination in federal employment"); *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (citing *Brown*, 425 U.S. at 835) ("[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees.").[2]  The court construes Plaintiff's *pro se* complaint broadly to allege causes of action under Title VII for hostile work environment and disparate treatment.

Moreover, it is beyond doubt that a federal employee alleging violations of Title VII may sue only "the head of the department, agency, or unit," in his or her official capacity and no one else.  *See* 42 U.S.C. § 2000e-16( c). ; *see, e.g.*, *Canino v. U.S.E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983) (affirming district court's dismissal of individual defendants sued under Title VII).  Accordingly, Plaintiff properly named Defendant Gonzales in his official capacity; however, the court must dismiss Defendants Maldonado, Pedroni, Mack, and Mazzeo.

---

[2]  Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-(2)(a)(1).

## I.     Prima Facie Case

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that an employment discrimination complaint need not allege specific facts establishing a prima facie case under the *McDonnell Douglas* framework.  534 U.S. 506, 508, 510-11 (2002).  In other words, a plaintiff is not charged with "forecast[ing] evidence sufficient to prove an element" of her claim.  *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) (emphasis omitted).  Rather, the standard is set forth in Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Swierkiewicz*, 534 U.S. at 508, 510-11; Fed. R. Civ. P. 8(a)(2).

However, the Fourth Circuit has interpreted *Swierkiewicz* to limit its sweep.  Essentially, the Fourth Circuit has not interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state a cognizable claim against the defendant.  *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim.") (internal citation omitted); *Iodice*, 289 F.3d at 281.

In the context of a hostile work environment claim, the Fourth Circuit stated:

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief.  The words "hostile work environment" are not talismanic, for they are but legal conclusions; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

*Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).[3]  In *Bass*, the Fourth

---

[3]  District courts in this circuit have noted the obvious tension between *Swierkiewicz* and *Bass*.  For example, in *Cockerham v. Stokes County Bd. of Ed.*, the District Court for the Middle District of North Carolina states that "[b]y continuing to apply a heightened pleading standard after

Circuit affirmed the District Court's grant of a motion to dismiss the plaintiff's hostile environment claim, finding that the plaintiff failed to allege facts sufficient to support that the alleged harassment was based on her gender, race, or age, or that the alleged harassment was sufficiently pervasive to alter the conditions of employment and create an abusive atmosphere. *Id.*

## I.    Hostile Work Environment

"An employee's work environment is a term, condition, or privilege of employment." *Smith v. First Union. Nat'l Bank*, 202 F.3d 234, 243 (4 th Cir. 2000) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)). To demonstrate a hostile work environment prohibited by Title VII, Plaintiff Signal must prove that she was the subject of conduct that was: (1) unwelcome; (2) based on her race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001).

Here, Plaintiff makes numerous allegations regarding her employment at FCI-Estill. For example, Plaintiff alleges, *inter alia*: that her supervisor always wants to know where she is; that she was asked to perform another employee's collateral duties; that she was told not to be in other staff members' offices; that she was ordered to teach in an unsafe room with no visibility; that her supervisor threatened to discontinue her SafeServ program due to low completion rates; and that she

---

*Swierkiewicz*, the Fourth Circuit is at odds with the Supreme Court's clear pronouncement that all elements of a prima facie case need not be supported with factual pleadings in order to survive a motion to dismiss." 302 F.Supp.2d 490, 495 (4th Cir. 2004). Nevertheless, in *Cockerham*, the court noted that it was "bound to follow the Fourth Circuit's interpretation of *Swierkiewicz*." *Id.*; *cf. Hoffman v. Baltimore Police Dept.*, 379 F.Supp.2d 778, 792, n.12 (D. Md. 2005) (stating that the court was bound to follow the Fourth Circuit's interpretation of *Swierkiewicz* and dismissing the plaintiff's hostile work environment claim for failure to plead facts in support of her claim). Likewise, this court is bound to follow the Fourth Circuit's interpretation of *Swierkiewicz*.

14

was the only member of a committee not to get an award.  However, aside from generally averring

that she is Korean and that her supervisor treats Caucasians, African-Americans, and Puerto Ricans

differently, Plaintiff offers absolutely no facts to support a causal connection between the alleged

hostile environment and her race.  *See, e.g., Bass*, 324 F.3d at 765 (noting that Bass' complaint was

full of problems she experienced with her co-workers and supervisors, but that those facts did not

seem to have anything to do with gender, race, or age harassment).  Plaintiff cites no racially

offensive conduct, language, or other overtly insulting racial conduct.  *See*, *e.g.*, *Honor v. Booz-Allen*

*& Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004) (affirming district court's grant of summary

judgment on plaintiff's hostile environment claim where there was no evidence of any racially-

offensive conduct directed at the plaintiff); *see also Dawson v. Rumsfeld*, 2006 WL 325867, *3 (E.D.

Va. Feb. 8, 2006) ("A review of the Fourth Circuit's decisions on the subject reveals that the type

of conduct necessary to state a hostile work environment claim involves racially offensive remarks

or other overt racially insulting conduct.").[4]

Moreover, even viewed in the light most favorable to Plaintiff, the facts she alleges fall short

of the type of severe or pervasive race-based activity necessary to state a hostile work environment

---

[4] In *Dawson*, the court states:

> To the extent that Plaintiff seeks redress for any employment actions that were based
> on hidden race-based discrimination, her remedy lies in a disparate treatment claim.
> Were this Court to permit a hostile work environment claim premised on such
> allegations, it would be cognizing an end run around the required elements of a
> disparate treatment claim.  There is no authority for such a cause of action.  The
> Court therefore agrees with the government that the *sine qua non* of a hostile work
> environment claim is the presence, in the workplace, of racially offensive remarks
> or other actions that are, in and of themselves, racially insulting.

2006 WL 325867, at *4.

claim.  To be actionable, "the conduct in question must be judged by both an objective and a subjective standard: [t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993).  In determining the existence of a hostile work environment, the court must examine the totality of the circumstances, which may include (1) the frequency of the alleged discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance.  *Harris*, 510 U.S. at 17.

Here, it is apparent that Plaintiff' allegations, which include conduct that may have been annoying, bothersome, and stress-inducing, do not meet the "severe or pervasive" standard for a hostile environment; in short, Plaintiff has not alleged facts to support a finding of the kind of racially-charged, offensive environment that courts have found actionable.  *See*, *e.g.*, *Bass*, 324 F.3d at 765 ("Even viewed in the light most favorable to Bass, the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her supervisors.  They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim."); *Hoffman*, 379 F.Supp.2d at 791 (finding the plaintiff's allegations that he was forced to relocate his office numerous times, that his work was subjected to intense scrutiny, that he was given an increased case load and forced to work longer uncompensated hours, and that his job title was downgraded fell short of stating a hostile environment).  In light of the aforementioned, the court concludes that Plaintiff has failed to allege facts sufficient to support at least the second and third elements of her hostile work environment claim under Title VII, 42 U.S.C. § 2000e, *et. seq.*  Accordingly, the court dismisses Plaintiff's claim

16

for hostile work environment.

## III.    Disparate Treatment

This case does not involve direct evidence of discrimination.[5]  Accordingly, the court analyzes Plaintiff's claims under the now-familiar *McDonnell Douglas v. Green*, 411 U.S. 792 (1972), burden-shifting scheme.  Under *McDonnell Douglas*, the plaintiff must establish a prima facie case of discrimination, at which point the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the challenged action.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  If the employer does so, the ultimate burden falls on the plaintiff to establish "that the legitimate reasons offered by the defendant were not its reasons, but were a pretext for discrimination."  *Id.*  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' "  *Id.* (quoting *Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

To establish a prima facie case of disparate treatment under *McDonnell Douglas*, Plaintiff must establish that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action by her employer; and (4) similarly

---

[5]  Neither party asserts that there is direct evidence of discrimination.  Even assuming that any party did make such an argument, the court would conclude that none of the evidence rises to the level of direct evidence.  Direct evidence is a term of art, specifically defined.  It both (1) reflects the alleged discriminatory attitude and (2) bears directly on the contested employment decision.  *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995).  "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination."  *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989).  In *Earey v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990) the Eleventh Circuit stated, "[o]ne example of direct evidence would be a management memorandum saying, 'Fire Earley -- he is too old.'"  In addition, this court has stated that "[a]n example of direct evidence would be a piece of paper saying, 'discipline Thomas, she is black.'"  *Thomas v. Westinghouse Savannah River Co.*, 21 F. Supp. 2d 551, 555 (D.S.C. 1997) (Simons, J.).

situated employees outside of her protected class received more favorable treatment. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981). A thorough review of the record, including the parties' pleadings and attachments, leads the court to conclude that Plaintiff cannot establish the third and fourth elements of a prima facie case with respect to the majority of Plaintiff's allegations. However, with respect to the remaining allegations, even if Plaintiff can meet her burden to establish a prima facie case, she cannot meet her burden under *McDonnell Douglas* to establish that the legitimate, non-discriminatory reasons offered by Defendants were not in fact the reasons, but rather a pretext for discrimination.

First, with respect to the third element of the prima facie case, an adverse employment action is a discriminatory act that "adversely affect[s]" the "terms, conditions, or benefits" of employment. *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (quoting *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997) (internal quotations omitted)). "Conduct short of 'ultimate employment decisions' can constitute adverse employment action." *Id*. at 865. For example, a "retaliatory downgrade of a performance evaluation *could* [a]ffect a term, condition, or benefit of employment," if it was used to detrimentally alter the terms or conditions of the recipient's employment. *Id*. at 867 (citing *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)); *see aslo Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("In sum, absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some stress not present in the old position."). Thus, with respect to Plaintiff's claim that Mack documented in a performance log that her SafeServ program had low completion rates, to the extent that this could be considered a low performance

18

evaluation, such action still does not constitute an adverse employment action because Plaintiff points to no resulting, detrimental alteration to the terms or conditions of her employment.[6] Plaintiff never alleges that the program was, in fact, terminated, or that this action had any effect on the terms and conditions of her employment.

Moreover, according to the Fourth Circuit, "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from . . . disciplinary procedures. *Id*. at 869 (citation omitted). "Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment action." *Dawson*, 2006 WL 325867 at *6. Thus, to the extent Plaintiff alleges a disparate treatment claim based on increased scrutiny from her supervisor or the fact that she needed to inform her supervisor of her whereabouts and the time frames she needed to perform certain tasks, such claim must fail for lack of any adverse employment action. Likewise, Plaintiff's claim that Mack "took an adverse employment action against her by ordering her not to go in the other staff members['] offices, thus changing the terms and conditions of employment," must fail because, as previously noted, the terms, conditions, or benefits of Plaintiff's employment do not entitle her to immunity from basic employment rules or policies. Similarly, Plaintiff's claim that it took over three weeks to compensate her for the Tenth Anniversary celebration does not involve any adverse employment action because Plaintiff received her compensation after filling out the requested forms. *See, e.g.*, *Runkle v. Gonzales*, 391 F.Supp.2d 210, 220-21 (D.C. Cir. 2005) ("[The court] concludes that unlike the demotion, failure to promote, and termination allegations at the heart of plaintiff's claims in *Swierkiewicz* and *Sparrow*, the types

---

[6] Additionally, the court can glean no evidence that this log documentation resulted from any form of retaliation.

of allegations here – even when assumed as true – do not amount to legally cognizable adverse actions and therefore would not enable him to ever establish a *prima facie* case under Title VII.").

Frankly, the court has sincere doubts as to whether *any* of Plaintiff's allegations actually amount to an adverse employment action.[7]  However, because Plaintiff's remaining allegations arguably may have some effect on the terms or conditions of her employment, the court will consider them as though they constitute adverse employment actions.  These remaining allegations include: being asked to perform another staff member's collateral duties, having difficulty scheduling and/or receiving time off, not receiving an award at the Tenth Anniversary celebration, and being assigned to work in an allegedly unsafe area.

To state a prima facie case with respect to these remaining allegations, Plaintiff still must establish the fourth element, that similarly situated employees outside of her protected class received more favorable treatment.  Plaintiff cannot state a prima facie case with respect to her allegation that she was the only person on the Tenth Anniversary Committee who did not receive an award.  Not only does the court believe that such action does not constitute an adverse employment action, but also, even if it does constitute an adverse employment action, Plaintiff cannot show any similarly situated employee outside her protected class who received more favorable treatment.  Rather, the record demonstrates that the chairperson of the Committee, who nominated only members of the Committee for an award, did not consider Plaintiff to be a member of the Committee, even though Plaintiff and others may have considered her to have been a member.  Because Plaintiff does not point to any similarly situated employee (who helped with the celebration but was not considered

---

[7]  As Defendants state in their motion: "These actions had no impact, nor has the Plaintiff established such, that her salary, benefits, job assignments, or employment status changed as a result of the actions.  Plaintiff remained in the same position, with the same salary, benefits, job assignments, and employment status she was in when the actions occurred."  (Def. Mot. at 16.)

by the chairperson to be a member of the Committee), who actually received an award, Plaintiff cannot state a prima facie case with respect to this allegation.

Regarding Plaintiff's remaining allegations, if the court assumes *arguendo* that Plaintiff can meet her burden to establish a prima facie case, Plaintiff still cannot meet her burden to establish that the legitimate, non-discriminatory reasons offered by Defendants were not in fact the reasons, but rather a pretext for discrimination.

First, in response to Plaintiff's allegation that she was the only staff member required to perform another's collateral duties, Defendants clearly articulate non-discriminatory reasons for the challenged conduct, stating that Plaintiff was asked to redraft the first proposal because she was the originator. Also, with respect to the second proposal, Defendants state that Plaintiff knew how to write proposals, whereas Rebecca Layer was new to the job and unfamiliar with the process. Plaintiff claims that these reasons are untrue, but she points to no other evidence that Defendants' articulated reasons were a pretext for discrimination. Accordingly, Plaintiff has not met her burden.

Second, Plaintiff claims that she had difficulty scheduling and/or receiving official time off to respond to a proposed adverse disciplinary action. However, as Defendants note, Plaintiff was never denied time off. Rather, on the day of the scheduled time off, Plaintiff was assigned to a peripheral post, her supervisor forgot about the requested time off, and Plaintiff did not remind her. As for Plaintiff's request for time off the next day, Plaintiff's supervisor wanted to make sure that any scheduled time off would not interfere with Plaintiff's classes. Plaintiff did not respond to her supervisor's email until 27 minutes after the requested time off started. Ultimately, Plaintiff's supervisor approved the time off in an email sent at 3:57, near the end of the requested time period, but Plaintiff never requested to reschedule the time off so she could meet with her representative.

21

Here, Defendants' stated reasons are legitimate and nondiscriminatory. In response to Defendants' reasons, however, Plaintiff summarily reasserts that her supervisor impeded, impaired, and obstructed her access to legal assistance and official time off.[8] However, Plaintiff does not point to any evidence showing that Defendants' stated reasons are but a pretext for intentional discrimination. Accordingly, Plaintiff has not met her burden. *See Burdine*, 450 U.S. at 252-53 (stating that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff").

Finally, with respect to Plaintiff's assertion that she was ordered to work in an allegedly unsafe area, neither her supervisor nor the Warden viewed the area as unsafe, and others had previously used the area as a classroom on other occasions. Both Plaintiff's supervisor and the Warden agreed that the windowless door should be replaced, and it was replaced. Additionally, Mack explained that Plaintiff's program, the FoodServ Program, was an extra program, and that no other classroom was available for Plaintiff to use without cancelling another program. Plaintiff disagrees with Defendants' stated non-discriminatory reasons; nevertheless, Plaintiff offers no evidence to rebut Defendants' reasons or to prove that the reasons are but a pretext for intentional discrimination. Accordingly, Plaintiff has not met her burden.

In sum, Plaintiff's complaint fails to state a claim for hostile work environment. First, Plaintiff cannot establish any causal link between the challenged conduct and a racially discriminatory motive. Second, the challenged conduct does not rise to the "serious and pervasive" standard. Next, Defendants are entitled to summary judgment on Plaintiff's claims for disparate

---

[8] As an additional matter, Plaintiff does not claim that her difficulty receiving time off negatively impacted her, and it is likely that she could not make such a showing, because the proposed adverse disciplinary action was not taken against her.

treatment. First, not only is it unlikely that any of the challenged conduct constitutes an adverse employment action, but also, with respect to certain of Plaintiff's allegations, she either cannot point to similarly situated individuals who received more favorable treatment, or she cannot meet her burden to prove that Defendants' legitimate, non-discriminatory reasons for such conduct were a pretext for intentional discrimination.

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's claim for hostile work environment. Additionally, Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's claim for disparate treatment. Defendants' motion for a stay of discovery is hereby rendered **MOOT**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**May 9, 2006**